*IN THE UNITED STATES DISTRICT COURT*
*FOR THE WESTERN DISTRICT OF MICHIGAN*
*SOUTHERN DIVISION*

UNITED STATES OF AMERICA,

                  Plaintiff,

vs.                           Case No.  1:25-cr-61

RICHARD JAMES SPRING,

                  Defendant.
_____/

*SENTENCING HEARING*

*BEFORE THE HONORABLE JANE M. BECKERING*
*United States District Judge*

*Grand Rapids, Michigan*
*Monday, October 20, 2025*

APPEARANCES:
For the Plaintiff:   MR. RICHARD CLAYTON STIFFLER
                         330 Ionia Avenue, NW
                         P.O. Box 208
                         Grand Rapids, MI 49501-0208

For the Defendant:   MR. DONALD SAPPANOS
                         Donald Sappanos PC
                         1595 W. Centre Street
                         Suite 100
                         Portage, MI 49024

ALSO PRESENT:        Benjamin Overgaard, Probation Officer

REPORTED BY:         GENEVIEVE A HAMLIN, RPR, CSR, RMR, CRR
                         Federal Official Court Reporter
                         110 Michigan Avenue NW
                         Grand Rapids, MI 49503

1  Grand Rapids, MI

2  October 20, 2025

3  11:02 a.m.

4                          *PROCEEDINGS*

5          THE CLERK:  All rise, please.  The United States

6  District Court for the Western District of Michigan, the

7  Honorable Jane M. Beckering, United States District Judge

8  presiding.

9          All persons having business before this Court draw

10  near, give attention, and you shall be heard.  God save these

11  United States and this Honorable Court.

12          This Court is now in session.  Please be seated.

13          THE COURT:  Good morning, everyone.

14          MR. STIFFLER:  Good morning, Your Honor.

15          MR. SAPPANOS:  Good morning.

16          THE COURT:  This is the date and time for sentencing

17  in the matter of the United States of America versus Richard

18  James Spring, case number 1:25-cr-61.

19          May I have appearances of counsel and introductions,

20  please?

21          MR. STIFFLER:  Good morning, Your Honor.  Clay

22  Stiffler on behalf of the United States.

23          MR. SAPPANOS:  And Don Sappanos on behalf of the

24  defendant, Your Honor.

25          THE COURT:  Mr. Spring, this is the first opportunity

you and I have had to meet one another.  I know your plea

hearing took place before Magistrate Judge Ray Kent.  At that

time you plead guilty pursuant to a plea agreement to Count 1

of the four count indictment to threats to kill and injure the

President in contravention of 18 USC 871.

Judge Kent issued a recommendation that I accept that

guilty plea.  I did, and I entered an order adopting that and

convicting you of this offense on June 30, 2025.

Having read the pre-sentence report I do accept the

written plea agreement here.  I find that it adequately

reflects the seriousness of the actual offense behavior and it

adequately serves the interests of justice.

In preparation for today's hearing I've reviewed a

number of documents.  I will identify those for the record.

If you feel I've missed anything, please let me know.  I want

to make sure I'm thoroughly prepared before making a decision

in this case.

I've read the indictment, the written plea agreement,

a transcript of the change of plea hearing, the final

pre-sentence report, government's sentencing memorandum,

defense sentencing memorandum as well as the attached records

to that memorandum, including counseling records and the like.

Have I missed anything from the government's

perspective?

MR. STIFFLER:  No, Your Honor.  Thank you.

1        THE COURT:  Defense?

2        MR. SAPPANOS:  No, Your Honor.  Thank you.

3        THE COURT:  Does the government have any objections

4  to the factual contents of the pre-sentence report?

5        MR. STIFFLER:  We do not.  Thank you, Your Honor.

6        THE COURT:  Does the defense?

7        MR. SAPPANOS:  No, Your Honor.

8        THE COURT:  Mr. Spring, I would like to ask you a few

9  questions at this time.  Have you read that pre-sentence

10  report in its entirety?

11        THE DEFENDANT:  Yes, Your Honor.

12        THE COURT:  Have you discussed its contents with your

13  counsel?

14        THE DEFENDANT:  Yes, Your Honor.

15        THE COURT:  Is there any part of that pre-sentence

16  report that you do not understand or about which you have any

17  questions?

18        THE DEFENDANT:  No, Your Honor.

19        THE COURT:  Have you been satisfied with the

20  representation you have received so far from your counsel?

21        THE DEFENDANT:  Yes, Your Honor.

22        THE COURT:  All right.  Thank you.  You may be

23  seated.

24        Does the government have any objections to the

25  advisory guidelines score as set forth in the pre-sentence

report?

        MR. STIFFLER:  No, Your Honor.

        THE COURT:  Does the defense?

        MR. SAPPANOS:  We do not, Your Honor.

        THE COURT:  I agree with you both that the guidelines are accurately calculated in the pre-sentence report and I'll adopt that as my own, and our probation officer, Mr. Overgaard, is here today.  Thank you for your work on this file.

        The baseline for this offense is 12.  There is one specific offense characteristic, and that is, given the presence of more than two threats, we have a two level increase.

        With regard to a victim-related adjustment, we go six levels up because an official victim was involved and six levels are added here, and the victim in this case was the President of the United States, and that status did motivate the conduct of Mr. Spring.

        There are no changes for adjustment for the role in the offense, obstruction of justice.  That leads to a total offense level of 20.

        Chapter four enhancement and mitigation.  Certainly no enhancements, and because this did involve a threat of violence, no reduction either.

        Mr. Spring is clearly entitled to acceptance of

responsibility. He entered a plea of guilty which was pretty quick from the time in which he underwent hearings before our court, so that's a two level reduction, and does the government grant a third level reduction?

MR. STIFFLER: I so move, Your Honor.

THE COURT: And so that leads to a -- and I'll grant that, leads to a total offense level of 17.

With regard to criminal history category, we have a subtotal criminal history score of zero which leads to a criminal history category of I.

With regard to the Court's sentencing options, the maximum term of imprisonment for this type offense under the statute is five years. The guidelines range for an offense level of 17 and a criminal history category of I is 24 to 30 months.

With regard to supervised release, the Court may impose a term of not more than five years. The guidelines range recommends between one and three years.

With regard to probation, Mr. Spring is eligible because this is a class C felony to not less than one nor more than five years under certain conditions associated with that. His guidelines range score takes him to zone D and, therefore, the advisory guidelines deem him ineligible for probation.

The maximum fine under the statute is $250,000. The guidelines range for a fine is between $10,000 and $95,000,

and there is an a mandatory special assessment for this felony

conviction of $100.

Restitution is applicable but it's my understanding,

Mr. Stiffler, that there's been nothing sought; is that

correct?

MR. STIFFLER: That's correct, Your Honor.

THE COURT: I don't find any factors warranting

departure under the guidelines, and that takes us to

allocution. Mr. Sappanos.

MR. SAPPANOS: Am I to come to the podium, Your

Honor?

THE COURT: Yes, please.

MR. SAPPANOS: Good morning again, Your Honor. Your

Honor, at least in my experience it's a unique case during a

unique time in our country/society where we have so much

political divide.

I think by everyone's explanation of the offense, and

mostly my client's, there's absolutely no justification for

these statements to both Mr. Trump, about Mr. Trump, and his

child. Nothing could justify those statements.

What has happened here, Your Honor, as a result of

government involvement, and actually I believe maybe even

before government involvement, my client had sought and began

therapy. He realized that this was unacceptable behavior and

inappropriate and probably illegal. Just because everybody's

doing it does not make it legal or acceptable, period. He began therapy. It is my understanding that he continues in therapy. I've spoke to therapist. He says that my client is making strides to deal with his anger.

There was alcohol involved. My client drank the alcohol. He can't blame anybody for being under the influence. He's the one that consumed the alcohol. I think that is under control also, Your Honor.

I would like to take you back to the date of the raid by the Secret Service. Might client was at home. He was unaware that they were coming, to the best of my knowledge. When the Secret Service came in, it is my understanding based on the discovery that I have that they did not locate any weapons of any sort. I think it even indicates in the pre-sentence or sentencing memorandum by the government that he had no interest in weapons, that he owned no weapons, and really had no means to carry out any of these statements that he had made.

I think, Your Honor -- and, again, this is not a sentence, if you will, factor, but it was curious to me that the government orchestrated this raid, if you will, visit, if you will, of my client's residence but left him there. They took his devices and they left him there. You know, they were kind enough, for whatever reason, to leave him at his residence where he was out moving about freely and working and

1  continuing to see his therapist.

2  THE COURT:  Can you keep your voice up?  I'm really

3  straining to hear you.

4  MR. SAPPANOS:  Usually I'm asked to keep my voice

5  down so I've been working on it.

6  THE COURT:  Thank you.

7  MR. SAPPANOS:  After a substantial amount of time he

8  was arrested.  He hadn't run.  He hadn't done anything other

9  than to continue his life.  I don't believe there was any

10  additional threats, and he continued to seek his therapy.

11  After his arrest the arraigning magistrate allowed

12  him to get out on his own recognizance.  To me, Your Honor, as

13  I said, it does not affect any of the guidelines but it

14  does -- it does to me send a message that first the

15  authorities did not believe that my client was going to do

16  anything because they would have, I think, taken him into

17  custody to protect anybody that he was threatening, including

18  the President or the President's child, and then I wasn't with

19  him at the arraignment or the initial appearance but the judge

20  let him out on -- or the magistrate on his own recognizance,

21  which was gracious, and I think my client has not violated any

22  terms of bond, has continued in doing what he's supposed to do

23  to be a productive, nonviolent, non-angry member of society,

24  and I do ask that you take all those things into consideration

25  when fashioning a sentence, Your Honor.

He's been out for a long time.  These statements were made mostly on the 25th, one on the 22nd.  It does indicate in the discovery that he had made statements to -- and threats to others in the past but limited.  I don't believe that he ever sought or obtained any therapy for either mental health or his drinking problem, but this certainly has got his attention. He certainly has been allowed to stay out, not taken into custody by law enforcement, which I think got a feel for my client at the time they raided his house, and I ask that you take those things into consideration, Your Honor, and potentially consider not putting him in prison, letting him go to work and return home on tether or whatever other options we may have, Your Honor.  I think based on the things that I mentioned, he's a good candidate for that.  Thank you.

THE COURT:  Mr. Spring, at this time you have an opportunity to engage in allocution, which is your chance to tell me anything you want me to know.

THE DEFENDANT:  Yep.  First of all, I just want to apologize to the Court and to President Trump for my actions. At the time I was going through a lot of mental health struggles that weren't addressed, and it was right after my dad had passed away so I was not in a good state, and I started consuming alcohol more and more, and that's no excuse for what I did but I would -- would never have any intentions on carrying anything out.  It was just a relapse moment for

1   me.  Thank you, Your Honor.

2          THE COURT:  All right.  Thank you.  Mr. Stiffler.

3          MR. SAPPANOS:  Do you want us to remain here or be

4   seated, Your Honor?

5          THE COURT:  Be seated.

6          MR. STIFFLER:  Thank you, Your Honor.  Mr. Sappanos

7   makes reference to the fact that we're in an extremely

8   divisive and unique time right now, which I don't dispute, but

9   Mr. Spring's threats go back to 2015.  This is an individual

10  who sees something that he doesn't like and he immediately

11  threatens to kill somebody.

12         So, 2015 he sees a billboard on U.S. 131 he doesn't

13  like and he threatens the purveyor of the billboard.  2022 he

14  makes threats to Congresswoman Marjorie Taylor Greene and

15  Congressman Matt Gaetz, and then here the sheer amount of

16  threats and all of which are true threats is somewhat

17  astounding.

18         We have seven threats on TikTok and two threats on

19  Twitter, or X formerly known as Twitter.  We have definitive

20  true threats to kill, maim, and do other horrible, unspeakable

21  things to federal officials and their family members, which

22  is -- it's not probably a crime, it is a crime, and one of the

23  things that really disturbs me about this -- now, I did not

24  object to acceptance, but the fact that Mr. Spring claimed in

25  his pre-sentence interview that he blacked out when he did

that, that is just not credible. He never said anything to
the Secret Service about not knowing when he did this, the
search of his phone with his communication with his girlfriend
showed that he was very well aware of what he did, and that's
a stock response that he's provided to law enforcement in the
past. To me, while I'm not objecting to the adjustment for
acceptance because he has plead guilty, to me that suggests
that deterrence is a major issue. Plus, this reference to it
probably being a crime means that nobody is taking this
seriously from the defense. He needs a firm sentence, a hot
stove. He has never had his hand on a hot stove and he needs
some deterrence, and that's why the government is seeking a
custodial sentence in Your Honor's discretion. This is
somebody who is just contributing to the anger and the rancor
that is online, and he's committing crimes doing it, and we
would submit that a custodial sentence is appropriate. Thank
you, Your Honor.

THE COURT: Thank you. The Court's duty is to impose
a sentence that is sufficient but not greater than necessary
to comply with the purposes of sentencing set forth in 18 USC
3553(a).

The guidelines are advisory to the Court and the
Court takes them as an initial benchmark or starting point
when sentencing in this case. The Court must make an
individualized assessment based on the facts presented, and

the guideline range is one of an array of factors warranting

consideration.

I fully recognize my discretion in determining an

appropriate sentence as established by the United States

Supreme Court in its decisions in *Booker, Kimbrough, Rita,*

*Gall, Spears*, and the Sixth Circuit case of *Herrera-Zuniga*,

and pursuant to *Tapia versus U.S.*, I recognize that

imprisonment is not suitable for the purpose of promoting

correction and rehabilitation, and I've considered all of the

arguments by the defense in support of their request for a

lower sentence.

This is a very difficult case, and I have been

pondering this day and what an appropriate sentence is and

certainly wanted to hear from you today before making that

decision.

Let's turn to the 3553(a) factors. The first is the

nature and circumstances of the offense. We know that on

January 22nd of this year and January 25th of this year Mr.

Spring made threats against our President. The plea agreement

didn't state what they were. They certainly are clearly

stated in the indictment, and you agreed to the contents of

that, but you're indicating you're going to rape the

President's wife in front of him and blow his fucking brains

out. Forgive me, but that's the literal words you used. You

also promised to put a bullet in his head. You waited for

three days and engaged in some more colloquy along these
lines. First, that was TikTok -- excuse me, X, and then on
TikTok another allegation after seeing a photo of the
President giving a press conference and helicopter in the
background, to put a bullet in his brain, watch him -- his God
die, make sure his brains are blown out, you'll kill him, and
you'll spray his brains all over, and I'll use the word
ejaculate on him, so pretty explicit, pretty raw, pretty
violent.

Our world is divisive. People are expressing their
First Amendment rights more than ever before. We had a No
Kings rally this past weekend. People feel strong about
politics given the factors that are at play. There's great
divisiveness in our society and there are significant
emotions, and I tend to believe our emotions are ahead of our
brains when we're evaluating the policies that are right for
America. People are driven by their emotions, and that can
lead to behaviors that are very dangerous, and we have seen
assassination attempts executed now twice on our President and
effectively on Charlie Kirk. We are in dangerous times, so to
lodge it -- and you didn't know that, right, in January, you
didn't know that, but here we are. It's serious. Not only
can you say that you didn't intend it -- and when I look at
your past, it's a double edge sword. You can argue you didn't
intend it because you've done this before dating back ten

years and never acted on it before, however you've been
warned.  This isn't your first rodeo.  It goes back ten years,
and those prior comments were allegations against someone that
posts a billboard, also alleging to put a bullet in that
person's head.  You were visited by case agents.  That's like
a warning sign, don't do this.  Seven years later you do it
again.  You make a threat against Marjorie Taylor Greene that
you're going to rape her and she's going to get what's coming
to her.  You're visited again by the capital police.  You're
advised to be careful about what you say.

You don't look threatening.  You look like the guy
next door.  You look like a great guy, but here you are being
warned, and now you don't wait seven years, you wait four
months and you're making an allegation against Matt Gaetz
that's raw and it's explicit.  You get so upset that you're
going off the handle on billboard ads on your computer
alleging you're going to kill and rape people and using very
derogatory terms to them that I will not repeat that are in
paragraph 27.

So, let's move on to the history and characteristics
of the defendant.  I jumped into what I would call the
aggravating factors which is this prior conduct that you
engaged in.  Let's talk about mitigating factors.  You waived
your right to appeal.  You gave up your right to a direct
appeal in this case, and I think you're entitled to concession

that you saved the government a lot of work in that regard.

You acknowledged a mental health issue and an anger issue multiple times. I counted at least five different places in your pre-sentence report where you're very upfront about that.

You've got parents with alcohol problems. You've indicated alcohol is not your friend in that regard and on occasions, at least, that has animated your conduct.

Challenges with childhood that many people do, but it's acknowledged.

A big credit to you is that you have started to go to mental health counseling. That's a big credit to you. You've been doing that since February. That's a step in the right direction. Wish you would have done it earlier, you wouldn't be here hopefully, but you're doing it.

You've had reliable employment, which is great. It shows you can comport yourself in society successfully and effectively. You've lost jobs because of this, two jobs, so you've already had implications associated with your conduct.

You have no prior criminal history. You've been given breaks in the past with similar conduct but you have no prior criminal history.

The other factor the Court -- factors the Court has to take into consideration are the seriousness of the offense, and I made notes to myself that the Secret Service had no way

of knowing that you had no intent to follow through, as you allege. They had to take these threats seriously. It's a large diversion of public resources, and it's not the first time that you've diverted resources because of your conduct.

My sentence must promote respect for the law and, again, you've been given opportunities to comport yourself and have not been doing it.

It must provide just punishment for the offense, afford adequate deterrence to criminal conduct by others, protect the public from further crimes of you, and that's something that you've shown a bit of an inability to restrain yourself.

Provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, and avoid unwarranted sentence disparities among similarly situated defendants.

I look in many cases at the Judiciary Sentencing Information Network. That is a database that is kept for all sentences dispensed in our country for a period of years. From 2020 to 2024 there were 52 people in your seat that had an offense level of 17, a criminal history category of I, and a base offense of 2A6.1. 94 percent of them got prison. The average sentence was 20 months, the mean sentence was 24 months.

As I have been doing this job for almost four years

now I've seen significant statistical numbers where judges vary downward.  They very rarely vary upward above the guidelines, maybe one percent.  I really struggled in your situation to decide what is a sufficient but not greater than necessary sentence.

Unlike many people I see in federal court who are dispensing fentanyl, they're carrying around switches to guns that are lethal, not to one but to many, in some regard it feels like putting you behind bars, a working, educated individual who is spouting out behind a screen feels like an excess, but your conduct is serious in serious times and I can't take that lightly.

I cannot vary to the extent that I'm not going to order a period of incarceration simply because you've done this too many times for this to be a one off, and the threats are serious and they're severe.

I am going to vary downward, I'm going to grant you that, and specifically because of the following:

Remorse.  Your remorse is being shown because you are getting counseling.  You haven't done that before.  You probably got a good lawyer that told you to do that, but, regardless, that's a real step in the right direction.  You've acknowledged the problem and you're seeking help for it. You've pinpointed it, mental health and anger management, so I'm going to give you credit for remorse and the conduct that

you've taken to remediate the situation.

And the question is how far do I vary?  Given the median and the mean I don't think you are -- I think you fall in line with that, but I'm individualizing this sentence.  You don't possess guns.  You haven't shown any history of domestic violence or other conduct of aggression, and so I do believe a lesser sentence below the average and the mean and the guideline range is appropriate.

Pursuant to the Sentencing Reform Act of 1984 I hereby sentence you to 18 months in the Bureau of Prisons.  I believe that is sufficient but not greater than necessary to achieve the purposes of sentencing as set forth in 18 USC 3553(a).

I'm going to make any recommendations you'd like to the Bureau of Prisons.  I can put mental health counseling.  Why don't you two confer.  Is there anything else you want me to put in there?  Anger management courses?

MR. SAPPANOS:  Your Honor, my client would request continued mental health treatment, if there is such a thing in a prison that he's going to go to, I'm assuming there is, and if he can continue with the alcohol counseling.  I'm not sure if that can be part of the mental health or he needs two separate counseling, and as you can see, he has two of the most important ladies in the world to him or the most important and he's asking if he could have a self surrender to

wrap things up with his mother who is also present, Your

Honor, and is going through some health related problems.  Not

a long period, Your Honor, not indefinite, but if you want,

she's here to inquire.  Maybe 60 days self surrender.

THE COURT:  So, we'll talk about self surrender in a

moment.

MR. SAPPANOS:  Okay.

THE COURT:  Let's put a pin in that.

So I'll put mental health counseling, anger

management counseling, and substance abuse use treatment.  I

think that's a great idea.

MR. SAPPANOS:  Thank you, Your Honor.

THE COURT:  Do you want me to put close to Michigan,

would that be helpful?

MR. SAPPANOS:  Please.

THE COURT:  We'll do that as well.

I'm going to impose a term of supervised release of

two years.  That was the recommendation by the -- our

probation officer.  I think that's spot on.  I do think

supervised release is appropriate given all of the

circumstances here and the history, and I think that's the

right number for all of the factors I've already addressed.

With regard to a fine, I think $2,000 is also

appropriate.  Mr. Spring does not possess the ability to pay a

fine within the guidelines range and so I think 2,000 is good.

I will waive interest so you can see that number come down instead of watching it creep up on you.

There's a mandatory special assessment of $100 that is due and payable immediately. We've had no request for restitution so I'll put a zero on that number.

There are no allegations seeking forfeiture of any items. Am I right, Mr. Stiffler?

MR. STIFFLER: That's correct, Your Honor.

THE COURT: Does the government move to dismiss Counts 2, 3, and 4?

MR. STIFFLER: I so move, Your Honor.

THE COURT: I will grant that. In addition to the mandatory and standard conditions of supervision, and I think all the standard conditions are appropriate here, there are special additional conditions that are set forth in an order that I provided to both defendant and his counsel before the hearing, the rationale of which comes from paragraph 94. It is my understanding you both read and signed that; is that correct?

MR. SAPPANOS: That's correct, Your Honor.

THE COURT: All right. That will enter along with the judgment of sentence today.

MR. SAPPANOS: Thank you.

THE COURT: Pursuant to *U.S. versus Bostic* does the government have any objections to the sentence just pronounced

that have not been previously raised?

MR. STIFFLER:  No.  Thank you, Your Honor.

THE COURT:  Same question to the defense?

MR. SAPPANOS:  No.  Thank you, Your Honor.

THE COURT:  Are there any objections that you have lodged that you feel I've insufficiently addressed?

MR. SAPPANOS:  No, Your Honor.

THE COURT:  Same from the government?

MR. STIFFLER:  No, Your Honor.

THE COURT:  So, Mr. Spring, I want to provide you with your appellate rights.  Now, I'll tell you you've waived them on direct appeal but, nevertheless, I'm required to just identify what they are.

In a right of direct appeal you have to file your notice of appeal within 14 days.  There's a form that could be filled out -- if you can't afford the cost of appeal, that can be waived, and there's a form that's filled out, and your lawyer would help you with that, but just confer with him about the nature of the agreement that you made in your written plea agreement.

And, Mr. Sappanos, as you know you remain obligated to represent your client unless relieved, should an appeal ensue, as --

MR. SAPPANOS:  Thank you, Your Honor.

THE COURT:  -- dictated by the Sixth Circuit.

1    Now let's get to remand.  The applicable statute is

2    18 USC 3143(a) that governs release or detention pending

3    sentence.  That is the situation.

4    In paragraph one it indicates that the Court shall

5    order that a person who's been found guilty of an offense and

6    who is awaiting execution of a sentence be detained unless the

7    Court finds by clear and convincing evidence that the person

8    is not likely to flee or pose a danger to the safety of any

9    other person or the community if released.

10    Paragraph two states that the Court shall order that

11    a person who has been found guilty of an offense, and it's

12    describing certain offenses, a crime of violence and then the

13    latter, a sex trafficking offense is not the case, a crime of

14    transnational terrorism, I don't know that that's the case.

15    There's not a maximum sentence of life imprisonment or death.

16    This is not a drug offense, and so what does crime of violence

17    mean to see if paragraph two applies, because that's a higher

18    burden?  It's an offense that has as an element the use,

19    attempted use, or threatened use of physical force against the

20    person or property of another.  There are others, too.  Any

21    other offense that is a felony and that by its nature involves

22    a substantial risk that physical force against the person or

23    property of another may be used in the course of committing

24    the offense or -- so these are conjunctive -- any other felony

25    under chapter 77, and those are not applicable, 109A, 110,

117.

        The way I'm reading this statute this is a crime of
violence.  Do you agree, Mr. Sappanos?

        MR. SAPPANOS:  I do.

        THE COURT:  And, Mr. Stiffler, do you agree as well?

        MR. STIFFLER:  I do, Your Honor.

        THE COURT:  So paragraph two dictates and it says I
am not -- I don't have the privilege of granting self
reporting unless I find that there's a substantial likelihood
that a motion for acquittal or new trial will be granted, I
certainly do not find that is the case, or the government has
recommended no sentence of imprisonment, and it's got another
requirement, but I take it the government has already
expressed no intention in that regard, correct, Mr. Stiffler?

        MR. STIFFLER:  That's correct, Your Honor.

        THE COURT:  So at this time I have no option under
the statute, I am required to remand at this time.

        Anything further from the government?

        MR. STIFFLER:  No.  Thank you, Your Honor.

        THE COURT:  Anything further from the defense?

        MR. SAPPANOS:  No, Your Honor.  Thank you.

        THE COURT:  All right.  Mr. Spring, I know you didn't
want to be here.  I hope this is the last time we see each
other, and I wish you well.  That's all for the record.  And
if you're doing great in a couple years, give me a call, I'd

1   love to hear how you're doing.  Feel free to express your

2   First Amendment rights, just don't threaten anyone.  That's

3   all for the record.

4           MR. SAPPANOS:  Thank you, Your Honor.

5           THE CLERK:  All rise, please.  This Court is now

6   adjourned.

7           *(Whereupon, hearing concluded at 11:38 a.m.)*

*REPORTER'S CERTIFICATE*

I, Genevieve A. Hamlin, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a full, true and correct transcript of the proceedings had in the within entitled and numbered cause on the date hereinbefore set forth; and I do further certify that the foregoing transcript has been prepared by me or under my direction.

/s/ Genevieve A. Hamlin

Genevieve A. Hamlin.
CSR-3218, RMR, CRR
U.S. District Court Reporter
110 Michigan Avenue NW
Suite 601
Grand Rapids, MI 49503
(517) 881-9582